IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**BETTY JANE AYERS,**

      **Plaintiff,**

v.                                     Case No.:  3:11-cv-00434

**SHEETZ, INC.,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Sanctions for Spoliation of Evidence (ECF No. 83). Plaintiff filed an addendum to the motion, and Defendant filed a response (ECF Nos. 86, 87). Having reviewed the documents, the Court finds that the issues are clear and oral argument is unnecessary. For the reasons that follow, the Court **DENIES** Plaintiff's Motion for Sanctions.

**I.    OPINION**

    **A.    Relevant Background**

This action involves structural damage to a medical office building owned by Plaintiff and located in Milton, West Virginia. Plaintiff alleges that the Defendant caused damage to the office building in the course of constructing a gasoline service station on land adjacent to the building. According to Plaintiff, Defendant engaged in blasting activity at the construction site, which ultimately led to cracks and other structural defects in Plaintiff's office building.

The record reflects that Defendant hired the services of a contractor, Basil Carpenter Excavating, Inc. ("Carpenter"), to perform blasting and excavation at the construction site. Carpenter then subcontracted with an individual named Darrell Thaxton ("Thaxton") to manage the blasting activity and retained another subcontractor, Sauls Seismic, Inc. ("Sauls"), to conduct pre-blast surveys on the condition of structures surrounding the construction site.

In the course of discovery, Plaintiff requested documentation regarding the particulars of the blasting activity. Defendant produced certain responsive records, but Plaintiff suspected that additional documentation existed and, thus, moved to compel the information and for sanctions. On August 6, 2012, the Court conducted a hearing on the motion to compel and issued an Order requiring Defendant to search for additional documents and, thereafter, to supplement several responses (ECF No. 73). In particular, the Court ordered Defendant to (1) either produce a second seismograph tape pertinent to the relevant blasting activity or demonstrate through affidavit or testimony that a second tape did not exist; (2) produce any additional blasting logs or demonstrate through affidavit or testimony that no other logs existed; and (3) provide a copy of Thaxton's blasting license for the relevant time period. In compliance with the Order, Defendant produced affidavits of Basil Carpenter; Robert Cook, Regional Manager of Sauls; and Defendant's counsel; as well as other documentation indicating that no other logs or tapes existed and explaining some discrepancies in the paperwork previously produced.[1] (ECF Nos. 78 at 1-13, 80).

On August 17, 2012, Plaintiff filed a Request for Additional Information

---

[1] Thaxton died in 2011, leaving his business-related documentation in the possession of his widow. Counsel for Defendant reportedly obtained from Mrs. Thaxton all available documentation prepared by Thaxton pertaining to the blasting at the Milton location. (ECF No. 70 at 2).

seeking documents related to the Milton construction and documents related to the construction by Defendant of a second gasoline service station in Barboursville, West Virginia. (ECF No. 77). When Defendant failed to respond to the Request for Additional Information, Plaintiff chose not to file a motion to compel but, instead, filed the instant Motion for Sanctions for Spoliation of Evidence.

### B. Motion for Sanctions for Spoliation

In the Motion for Sanctions, Plaintiff claims the following:

1. Carpenter failed to produce detailed blasting logs and journals required to be created and maintained by West Virginia law despite Plaintiff's request for that documentation. The failure of Carpenter to produce the information has caused "evidence crucial to proving Plaintiff's case to become unavailable." (ECF No. 83 at 1).

2. Defendant failed to produce documentation requested by Plaintiff that would identify the actual dates and locations of blasting at the Milton and Barboursville construction sites. The failure of Defendant to supply this information has caused "evidence crucial to proving Plaintiff's case to become unavailable." (*Id.*).

3. Sauls lost a manilla folder containing all of the pre-blast surveys that it claims to have conducted on structures near the Milton and Barboursville construction sites. Therefore, Sauls failed to produce them to Plaintiff despite her requests by telephone and subpoena. (*Id.* at 2-3).

4. Traveler's Insurance Company ("Traveler's") lost its file on Plaintiff's first-party claim for blasting damages "thus hampering Plaintiff's ability to prove her claim" and violating "its duty to preserve." (*Id.* at 4).

As sanctions for the alleged spoliation of evidence, Plaintiff seeks a jury instruction of adverse inference against Defendant.

## C.     Relevant Law on Sanctions for Spoliation of Evidence

Spoliation of evidence is "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. General Motors Corp.,* 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2nd Cir. 1999)). A party has a duty to preserve material evidence when the party "reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri,* 271 F.3d 591 (citing *Kronisch v. United States,* 150 F.3d 112, 126 (2nd Cir. 1998)). This duty requires the party to "identify, locate, and maintain information that is relevant to specific, predictable, and identifiable litigation" and to "notify the opposing party of evidence in the hands of third parties." *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 522-23 (D.Md. 2010). The failure of a party in a federal proceeding to preserve material evidence may result in the imposition of sanctions by the district court.[2] The district court has broad discretion when selecting a sanction for spoliation; however, "the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri,* 271 F.3d at 590 (quoting *West,* 167 F.3d at 779).

Sanctions for spoliation may be imposed when the moving party establishes that:

> (1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence

---

[2] Plaintiff relies upon *Hannah v. Heeter,* 584 S.E.2d 560 (W.Va. 2003), a decision of the Supreme Court of Appeals of West Virginia, to provide the basis for sanctions in the present action. However, *Hannah* addresses spoliation in the context of a stand-alone tort and, thus, is inapplicable to the issue before the court. Here, the authority of the court to sanction a party for spoliation derives from the court's inherent power to control the judicial process and litigation, not from substantive law. *Silvestri,* 271 F.3d at 590.

- 4 -

> that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Goodman v. Praxair Servs. Inc.,* 632 F.Supp.2d 494, 509 (D.Md. 2009) (quoting *Thompson v. U.S. Dept. of Housing & Urban Dev.,* 219 F.R.D. 93, 101 (D.Md. 2003)). In the Fourth Circuit, a party who does not possess or own the evidence may still have "control" over it "when that party has the right, authority, or practical ability to obtain [the evidence] from a non-party to the action." *Victor Stanley,* 269 F.R.D. at 523 (quoting *Goodman,* 632 F.Supp.2d at 515).

As previously stated, Plaintiff seeks the sanction of an adverse inference instruction in this case. Through an adverse inference instruction, the court directs the jury that it may infer that the lost, destroyed, or materially altered evidence was unfavorable to the party that caused the loss, destruction, or material alteration. *Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 155 (4th Cir. 1995). As set forth below, the undersigned has considered each of Plaintiff's contentions in turn to determine whether (1) spoliation occurred and (2) Defendant should be sanctioned for the spoliation.

### D. Analysis

#### 1. State-Mandated Blasting Documentation

First, Plaintiff complains that Carpenter did not produce any of the detailed blasting logs and journals required by the State of West Virginia to be created at the time of blasting activity and maintained for five years thereafter. Plaintiff argues that this documentation would conclusively establish the locations and dates of the blasting done by Carpenter at the Barboursville and Milton construction sites.

Plaintiff contends that, contrary to the representations of Defendant, blasting occurred at the Milton site prior to March 17, 2009, the date on which Sauls completed a pre-blast survey of Plaintiff's medical office building. According to Plaintiff, detailed blasting logs and journals would substantially support her claim that the structural defects identified on the pre-blast survey were not present before the blasting and, instead, occurred or were significantly exacerbated by the blasting. In response, Defendant argues that detailed blasting logs and journals probably never existed, and if they did exist, Defendant had no control over their preservation or destruction.

The relevant evidence of record does not provide support for Plaintiff's motion for sanctions related to state-mandated blasting documentation. Even if Plaintiff could establish that Defendant had the "right, authority, or practical ability" to obtain and preserve blasting logs and journals, she cannot demonstrate that the documentation ever existed. It follows that if the evidence never existed, the Defendant cannot be held accountable for its spoliation.[3]

In his affidavit, Basil Carpenter testified that he relied upon Thaxton "to keep the appropriate logs and journals for blasting." (ECF No. 80). Mr. Carpenter added that detailed blasting logs and journals like those described by Plaintiff were required by West Virginia law to be kept for mining blasting, but were not required for construction blasting such as the blasting performed at the Milton location. Nonetheless, Mr. Carpenter conducted a search of Thaxton's records looking for any

---

[3] In fact, Plaintiff states in her Motion that the West Virginia Attorney General's Office intends to file charges against the parties responsible for the blasting at the Milton construction site for failure to keep and maintain the detailed blasting journals required by West Virginia law. This representation lends further support to Defendant's contention that the documents never existed.

- 6 -

documentation that applied to the Milton site and found only a daily journal, which was provided to Plaintiff.

In another affidavit, Defendant's counsel described his efforts to obtain any and all documentation relating to the blasting at Milton from both Basil Carpenter and Thaxton's widow. (ECF No. 78-1 at 5-11). Counsel did not uncover any records except for Thaxton's daily journal, which was provided to Plaintiff. Counsel confirmed that Defendant has no other records in its possession. Plaintiff does not dispute that defense counsel has produced every record available to him. Consequently, in the absence of evidence that state-mandated blasting logs and journals were created by Carpenter or Thaxton, this Court must decline Plaintiff's request to sanction Defendant for their spoliation.[4]

### 2.   *Additional Records Held by Sheetz*

Plaintiff argues that Mr. Bill Bucci, Defendant's manager responsible for overseeing the Milton construction, produced "nothing in the way of supportive documentation to identify actual dates and location of blasting at the two Sheetz Stores as was requested by Plaintiff" in her August filing and failed to list Basil Carpenter Excavating, Inc. in documentation filed with the Barboursville Town Hall as a subcontractor at the Barboursville site. Plaintiff's complaint that Defendant filed no response to the Request for Additional Information, while an appropriate basis for a motion to compel, does not substantiate a motion for sanctions based upon spoliation of evidence. Plaintiff fails to identify any specific evidence that was created

---

[4] Plaintiff also argues that Defendant should be held responsible for Basil Carpenter's failure to answer Plaintiff's Request for Additional Information. As Defendant points out, Basil Carpenter is not a party to this action and Defendant has no relationship with Carpenter other than having contracted with Carpenter to perform blasting and excavation activities on the Barboursville and Milton construction sites.

prior to or during the litigation, that was material to her claims, and that was substantially altered or destroyed so as to prejudice her ability to prove her case. Plaintiff again suggests the existence of a second seismograph tape that she believes was generated during the blasting at the Milton site and would prove her contention that blasting occurred earlier than represented by Defendant. The Court previously addressed the existence of a second seismograph tape by requiring Defendant to clarify with testimony whether one or two tapes were used at the Milton location. Defendant supplied affidavits indicating that only one seismograph tape was generated during the blasting at Milton and that tape was previously provided to the Plaintiff. (ECF Nos. 78-1 at 10, 80 at 2). In light of the sworn testimony and the lack of evidence to the contrary, the Court has no basis upon which to conclude that a second tape existed and was destroyed. Plaintiff's speculation and conclusory statements to that effect are insufficient to support an award of sanctions.

Moreover, Plaintiff's argument regarding Defendant's failure to list Carpenter as a subcontractor in filings with the Village of Barboursville is irrelevant to a ruling on this motion. In Plaintiff's view, Defendant did not list Carpenter in the documents submitted to the Village of Barboursville because no blasting occurred at the Barboursville site. Therefore, the logical conclusion is that all of the blasting was done at Milton. Since the blasting indisputably began in early March, the damage to Plaintiff's building likely occurred from blasting done prior to Sauls's March 17 pre-blast survey. Certainly, Plaintiff may argue this theory to the jury; however, it lacks any factual assertions suggesting spoliation of evidence. To the contrary, the written submission to the Village of Barboursville, arguably the most critical piece of evidence in Plaintiff's theory, remains unaltered and in existence. Accordingly,

Plaintiff is not entitled to an adverse inference instruction on this ground.

### 3. *Sauls Seismic's Lost File*

Plaintiff contends that Defendant should be sanctioned with an adverse inference instruction based upon a "lost" manilla folder that contained copies of all of the pre-blast surveys conducted by Sauls. Plaintiff's belief that the folder is missing is based upon a telephone conversation she had with Mr. Robert Cook, General Manager of Sauls, on August 15, 2012. (ECF No. 83 at 11). According to Plaintiff, she contacted Mr. Cook and requested copies of the surveys performed in connection with both the Barboursville and Milton construction. Mr. Cook informed Plaintiff that all of the surveys were kept in a manilla folder at Sauls, but the folder was "missing." Later, Plaintiff received a letter from Sauls stating that Sauls had found some of the surveys, but copies were not enclosed with the letter. On August 28, 2012, counsel for Sauls filed an objection to a subpoena served by Plaintiff requesting production of the pre-blast surveys. The objection indicated ***not*** that the surveys were missing, but that they were protected information and could not be released without the consent of the property owners. (ECF No. 83-8 at 7-9). Plaintiff did receive a document from Sauls purportedly listing the names and addresses of the owners whose property was inspected by Sauls before the blasting at the Milton location. (ECF No. 83-8 at 26). Plaintiff asserts that she contacted two of the property owners and was told by them that Sauls had not performed a pre-blast survey on their property and they had never received a copy of any such survey. Of note, Plaintiff did not move to compel Saul's compliance with the subpoena. Furthermore, Plaintiff has not supplied any additional evidence to corroborate her belief that pre-blast surveys existed and were intentionally lost or destroyed.

As previously stated, sanctions for spoliation are not appropriate unless material evidence is destroyed or substantially altered after the party in control of the evidence had a duty to preserve it. Assuming, *arguendo,* that pre-blast surveys were intentionally destroyed by Sauls, Plaintiff has not established that Defendant had knowledge of the particular surveys or was ever in a position to obtain and preserve them. According to the affidavit of Robert Cook, pre-blast surveys were not required by West Virginia law to be conducted or submitted on construction projects. (ECF No. 83-8 at 3-4). Nevertheless, Carpenter routinely hired Sauls to perform pre-blast surveys for Carpenter's "own protection." (*Id.).* Sauls had no apparent contact with Defendant and was not acting on behalf of Defendant when it conducted the surveys. Based on the record available to the Court, neither Carpenter nor Sauls claims to have provided the surveys to Defendant or even to have informed Defendant of their existence. Therefore, there simply is nothing in the record to bridge the gap between the creation of the surveys by Sauls and the duty of Defendant to preserve material evidence in this case. Instead, Plaintiff provides only an unsubstantiated claim that a nonparty business entity, unrelated to Defendant, may have lost or destroyed its own records. As such, Plaintiff fails to supply a factual basis to support sanctioning Defendant for spoliation of evidence.

### 4.     *Traveler's File*

Finally, Plaintiff seeks to hold Defendant responsible for Traveler's Insurance Company's loss of Plaintiff's claim file. Plaintiff states that Traveler's collected information on her behalf after she made a claim to Traveler's for structural damage to her building. At the time, Traveler's carried the insurance on the building. Plaintiff recently attempted to obtain a copy of her claim file from a supervisor at Traveler's,

who informed Plaintiff that her local adjuster had checked out the file and had not returned it. When Plaintiff contacted her local adjuster, he claimed that he had returned the file to archive approximately three years earlier. At this time, no one at Traveler's seems to know what happened to the file. (ECF No. 83 at 3-4).

Plaintiff fails to provide any reasonable basis for sanctioning Defendant for the loss of this file.[5] Clearly, Defendant did not control the evidence contained in the file and did not destroy or misplace it. Plaintiff argues that Traveler's had a heightened duty to preserve the evidence contained in her file; however, she wholly fails to explain how that duty implicates the Defendant. Plaintiff emphasizes that Traveler's also insured the Defendant, but stops short of connecting that relationship to spoliation of evidence that could be attributable to Defendant. Plaintiff claims that Traveler's had incentive to "lose" her file because it could then deny her first-party claim on the basis that the structural damage to her building was from soil settlement and could further escape paying a judgment in this litigation by insuring that Plaintiff was denied material evidence. While those theories, if true, might support a claim against Traveler's, they simply provide no basis upon which to sanction Defendant in this case. Moreover, Plaintiff has failed to demonstrate prejudice from the loss of the Traveler's file. She does not identify any document or other evidence that was placed in her Traveler's file that could not be obtained from another source. Accordingly, Plaintiff is not entitled to an adverse inference instruction on this ground.

---

[5] At certain points in Plaintiff's Motion for Sanctions, she seems to ask the Court to hold Traveler's and Sauls liable for third-party spoliation of evidence. Plaintiff clearly is confusing the purpose of her motion and the authority of this Court. Plaintiff has no pending complaint before this Court seeking damages from Traveler's or Sauls for the negligent or intentional spoliation of evidence. Consequently, the Court has no jurisdiction over such a claim. To the extent that Plaintiff seeks to hold Defendant responsible for the negligent or intentional spoliation of evidence by Sauls or Traveler's, no such cause of action exists.

## II. <u>ORDER</u>

Wherefore, for the forgoing reasons, the Court **DENIES** Plaintiff's Motion for Sanctions for Spoliation of Evidence (ECF No. 83). The Clerk is instructed to provide a copy of this Order to Plaintiff and counsel of record.

It is so **ORDERED.**

**ENTERED:** October 18, 2012.

Cheryl A. Eifert
United States Magistrate Judge